**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELIZABETH SALINAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. H – 04 – 1369** |
| | § | |
| **EXXON MOBIL CORPORATION a/k/a** | § | |
| **EXXON MOBIL CHEMICAL CO.,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM AND ORDER**</u>

     Defendant has filed a Motion for Summary Judgment (Doc. #54), a Motion to Strike Plaintiff's Expert (Doc. #60), and a Motion to Compel Responses to Discovery Requests (Doc. #63). Plaintiff has filed a Motion to Compel Defendant to Respond to Discovery Requests (Doc. #61). For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. #54). Accordingly, all remaining motions are **DENIED AS MOOT**.

**I.      BACKGROUND**

     In this employment discrimination case, Plaintiff Elizabeth Salinas alleges that Defendant Exxon Mobil Corporation ("Exxon") violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, when it medically terminated her employment due to Salinas' frequent unplanned absences.

     Salinas began working at Exxon in 1991 as an Instrument Technician within the Refinery Mechanical Maintenance Department. From late 1991 to September 2000, Salinas experienced considerable absenteeism. Her performance review for April 1, 1997 through August 1, 1999,

noted that she needed to demonstrate a stronger commitment to attendance and that her unavailability for work imposed unexpected hardships on other employees.

Salinas began an extended medical leave from the Instrument Technician position in late April 2000 due to medical problems from an automobile accident two years earlier.  In the summer of 2000, while still off work, Salinas was diagnosed with fibromyalgia and by September 2000 was placed on approved paid medical leave, certified as partially impaired by Exxon's Medical and Occupational Health Department ("MOHD"), and placed on permanent medical restrictions.  These permanent restrictions included:  no lifting over twenty pounds; limit repeated stooping, squatting, or bending; limit standing to fifteen to thirty minutes; no overhead activity; climbing no more than two flights of stairs; no climbing ladders; limit hand gripping to twenty pounds; no work in high, unguarded places; and sedentary activity.  Salinas' medical restrictions precluded her from performing the duties of an Instrument Technician.

Exxon conducted a search that could accommodate Salinas' medical restrictions and in January 2001, placed her in the position of Senior Administrative Assistant ("SAA") in the Contracts Administration Section.  Salinas was the sole clerical support for the section and her duties included performing secretarial responsibilities, maintaining the file room, scheduling training for contractors, maintaining the supervisor's calendar, and coordinating the annual safety recognition banquet.  As part of Salinas' transfer to the SAA position, Exxon and the Gulf Coast Industrial Workers Union, of which Salinas was a member, entered into a Side Agreement, expressly stating that:

> Ms. Salinas is expected to fully meet the job requirements and satisfactorily perform all responsibilities associated with the position.  If Ms. Salinas' medical restrictions prohibit her from fulfilling the obligations of her job as a Senior Administrative Assistant, then she will be medically evaluated and her restrictions reviewed.

Def.'s Mot. for Summ. J., Ex. D, Attachment 5.

Salinas' attendance in the SAA position was acceptable from January 2001 until July 2001.  Starting in August 2001, however, Salinas began experiencing further serious health problems that impacted her work attendance.  Between August 2001 and December 2001, Salinas missed 264.5 hours of work for medical reasons.  In January and February of 2002, Salinas missed approximately two weeks of work after suffering a mild stroke.  Over the following months, Salinas continued to miss work for various medical reasons, including breast tumors, migraines, and dysfunctional uterine bleeding.  As a result, from January 1, 2002 to June 17, 2002, Salinas missed 270.5 hours of work due to medical reasons.  On June 18, 2002, Salinas took a medical leave to have a hysterectomy.  Pursuant to her doctor's guidance, MOHD certified Salinas as "unfit for work" from June 18, 2002 through October 7, 2002.

In November 2002, Kurt Hardgrave, Salinas' supervisor, met with her to discuss her annual performance evaluation.  The review noted that Salinas' absences were inhibiting her work performance, to the point where those in Contracts Administration no longer requested her assistance because she was not dependable.

From October 7, 2002 to December 31, 2002, Salinas continued to miss work.  She missed an additional 93.75 hours of work in 2002 after returning from her four-month leave.  In sum, Salinas missed 976.25 hours from work for medical reasons in 2002.  She was fully paid for all of this time.

Due to Salinas' excessive absences for medical reasons, Exxon management sought input from MOHD regarding Salinas' status.  On January 14, 2003, Exxon management convened to discuss Salinas' medical status, and whether she would be able to regularly attend work in the future.  Dr. Burton advised the group that Maximum Medical Improvement had been reached,

and that, due to Salinas' various chronic conditions, it appeared Salinas would continue to experience frequent unplanned absences.   Management decided to remove Salinas from her position, place her on disability leave, conduct a job search for an open position that could accommodate Salinas' limitations, and present her case for long-term disability ("LTD") eligibility consideration.

On January 22, 2003, Hardgrave and his supervisor, David McLain, informed Salinas that they could no longer accommodate her medical restrictions within the SAA position and that she would be placed on paid disability leave, effective immediately.   They instructed her to pack up her office as it would be her last day in the SAA position.   Hardgrave and McLain informed Salinas that the Human Resources Department would attempt to accommodate her limitations by searching for any available position that she could perform given her restrictions and, if a position could not be found, she would be considered for LTD benefits.   Human Resources immediately initiated a job search in Exxon's Baytown Area.

On January 28, 2003, Salinas filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination under the ADA based on her removal from the SAA position.

By March 2003, the job search revealed that there were no available positions that could accommodate Salinas' medical restrictions.   Salinas' case was submitted to the Disability Review Committee ("DRC"), which approved her for LTD benefits.   Pursuant to Exxon policy in connection with such approval, Salinas was scheduled for medical termination from her employment at Exxon.   On March 31, 2003, Exxon sent Salinas a letter advising her that no positions had been located which could accommodate her job restrictions, that her case has been

referred to the DRC, that a positive ruling had come back, and she would have a medical termination date of May 1, 2003.

In connection with her medical termination, Exxon sent Salinas an application for LTD benefits and information regarding other sources of benefits.  In order to begin to receive such benefits, Salinas was required to complete and return this paperwork; Salinas never submitted any of the forms.  Had she submitted the completed forms, Salinas would have begun to receive her LTD benefits effective with her medical termination date.

On January 16, 2004, Salinas filed a second charge of discrimination alleging retaliation under Title VII[1] and the ADA for filing her first charge of discrimination and for assisting others with their charges of discrimination.  Salinas then filed this lawsuit.  Exxon moves for summary judgment on all claims.

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations and citations omitted).  A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id.*

---

[1] Salinas had stated a claim of retaliation under Title VII in this lawsuit, as well as a claim of retaliation under the ADA.  Salinas has conceded that she never participated in any activity protected by Title VII; therefore her claim of Title VII retaliation is dismissed.

If Salinas fails to prove an essential element of her case, then all other facts are necessarily rendered immaterial and summary judgment must be entered for Exxon. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If Exxon shows that there is a lack of evidence to support Salinas' case, Salinas "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation and citation omitted).

## III.   FMLA CLAIM

Under the FMLA, a covered employer must provide an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not penalize an employee for exercising his FMLA rights. *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 763 (5th Cir. 2001). Salinas alleges that Exxon retaliated against her because she exercised her rights under the FMLA.[2]

To make a prima facie showing of retaliation under the FMLA, Salinas must prove that: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and either (3)(a) she was treated less favorably than an employee who had not requested FMLA leave; or (3)(b) the adverse decision occurred because she took FMLA leave. *Id.* at 768. If Salinas makes a prima facie case, the burden shifts to Exxon to articulate a legitimate, non-

---

[2] Salinas also argues that Exxon violated her prescriptive rights under the FMLA. In explaining her cause of action, however, Salinas argues that Exxon infringed her FMLA rights by firing her for taking FMLA leave – this is identical to her claim of retaliation under the FMLA. Salinas also makes a brief argument that Exxon violated her FMLA rights by not designating her leave as FMLA leave and failing to keep proper records as required by the FMLA. Salinas does not, however, explain how she was prejudiced by this action; her claim therefore fails. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002) (stating that an employee who brings a cause of action under the FMLA bears the burden of proving a real impairment of their rights and resulting prejudice).

discriminatory reason for the adverse employment action.  *Id.*  If Exxon does so, Salinas must prove by a preponderance of the evidence that Exxon's reason is a pretext for retaliation.  *Id.*

Exxon does not dispute that Salinas was protected under the FMLA, or that she suffered an adverse employment action when she was medically terminated.  Exxon argues, however, that Salinas cannot meet the third element of her prima facie case because she was not terminated because she took FMLA leave.  The fact that Salinas was fired shortly after taking FMLA leave, however, demonstrates a causal connection between taking the leave and being fired.  This is enough to prove a prima facie case of retaliation.

Although Salinas has made a prima facie case of FMLA retaliation, the presumption of discrimination is rebutted by Exxon's legitimate, non-discriminatory reason for firing Salinas. Exxon terminated Salinas because her excessive absences prevented her from regularly attending work.   Salinas had lengthy absences throughout her career with Exxon, which increased significantly during her last few years of employment with the company.  In 2002 alone, Salinas missed approximately 975 hours of work for medical reasons.  Based on her pattern of excessive absenteeism, Exxon reasonably believed that Salinas would continue to experience frequent absences in the future.  Exxon was entitled to fire Salinas for excessive absenteeism.  *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (affirming summary judgment for employer on an FMLA claim because the evidence proved that the employee was fired for excessive absences, therefore no reasonable juror could conclude that the employee was fired for requesting FMLA leave).

To survive summary judgment, Salinas must produce evidence demonstrating that Exxon's proffered reason for terminating her is a pretext for discrimination.  Salinas has not met this burden.  Salinas does not deny that she was often absent from work; she argues, however,

that, because her absences were medically related, the real reason for her termination was the fact that she took FMLA leave.  Salinas supports her position with language from Exxon representatives who stated that they considered all of Salinas' absences in deciding to terminate her.  Salinas argues that, because some of these absences were protected under the FMLA, Exxon impermissibly considered protected conduct in making its decision to terminate her, and therefore retaliated against her in violation of the FMLA.

The FMLA requires an employer to provide an employee with up to twelve weeks of unpaid leave when she suffers from a serious health condition that makes her unable to perform her job.  *See* 29 U.S.C. § 2612.  Not only did Exxon provide Salinas a great deal more than twelve weeks of medical leave, it paid her during her leave.  While it is true that Salinas' lengthy absences were due to a variety of medical problems, once Salinas used up her twelve weeks, Exxon had no obligation under the FMLA to provide her with any more leave until she qualified for it.[3]  Exxon was within its rights to fire Salinas for taking leave beyond that which is afforded by the FMLA.  *See Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655, 660 (N.D. Ohio 2003) ("Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.").

When Exxon fired Salinas due to excessive absences, Exxon necessarily had to consider both her FMLA-protected leave and her non-FMLA-protected leave.  An employer cannot possibly determine whether an employee took excessive leave unless it first determines that she exhausted her FMLA leave; otherwise the absences would not be excessive.  Given Exxon's generous grant of paid medical leave to Salinas, which was above and beyond that required by

---

[3] An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave.  29 U.S.C. § 2611(2).

the FMLA, Salinas cannot show that Exxon's legitimate, non-discriminatory reason for terminating her is a pretext for retaliation for exercising her FMLA rights. Exxon is thus entitled to summary judgment on this claim.

## IV.   ADA CLAIMS

### A.   Discrimination

The ADA makes it unlawful for an employer to discriminate against an employee who is a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). When circumstantial evidence is offered to show discrimination under the ADA, the *McDonnell Douglas*[4] burden-shifting analysis applies. *McInnis v. Alamo Comm. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). Salinas must first make a prima facie showing of discrimination by proving that: (1) she is disabled; (2) she is qualified for the job; and (3) she was subjected to an adverse employment action because of the disability. *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir. 2001). If Salinas can make a prima facie showing, then Exxon bears the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action. *McInnis*, 207 F.3d at 280. If Exxon articulates a reason, then Salinas bears the ultimate burden of establishing by a preponderance of the evidence that the proffered reason was a pretext for unlawful discrimination. *Id*.

As used in the ADA, "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Salinas argues that Exxon discriminated against her because it regarded her as disabled.

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The parties dispute whether Exxon regarded Salinas as having a disability, but the Court need not decide this issue because Salinas clearly was not qualified for her job, and therefore cannot make a prima facie case of discrimination under the ADA.  To be qualified to perform her job, Salinas must be able to perform the essential functions of the job with or without reasonable accommodation.  Common sense dictates, and the Fifth Circuit has recognized, that appearing for work is an essential element of most jobs.  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("[A]n essential element of any . . . job is an ability to appear for work . . . and to complete assigned tasks within a reasonable period of time.").  Salinas was not qualified to perform her job because of her excessive absenteeism.  *Hypes*, 134 F.3d at 726 (holding that the plaintiff could not prevail on his ADA claim because he was excessively absent, and therefore not qualified to perform his job).

As discussed, Salinas consistently missed work and often worked only partial days.  As noted in performance evaluations, Salinas' absences inhibited her work performance to the point where others no longer relied on her assistance because she was not dependable.  Furthermore, based on Salinas' abundant history of missing work for a variety of medical reasons, Exxon concluded that she would continue to be regularly absent in the future.[5]  Salinas admits that she was often absent from work due to her medical problems.  Because of Salinas' excessive absences, she was not qualified to perform her job, and therefore cannot prevail on her claim of discrimination under the ADA; Exxon is entitled to summary judgment on this claim.

---

[5] Salinas takes issue with Exxon's reliance on her past absences to predict future absences, and argues that Exxon failed adequately to investigate whether she would continue to be excessively absent in the future.  Salinas' medical absences reveal that she suffered from one medical problem after another – rather than being afflicted by a persistent medical problem that caused all of her medical absences.  Given this history, Exxon reasonably assumed that Salinas would continue her unceasing pattern of medically-related absences.

### B.    Retaliation

To make a prima facie showing of retaliation under the ADA, Salinas must show that: (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998)). If Salinas establishes a prima facie case, Exxon must produce a legitimate, non-discriminatory reason for the adverse employment action.  *Seaman*, 179 F.3d at 301.  If Exxon articulates a legitimate, non-discriminatory reason, then Salinas must prove that Exxon's proffered reason is a pretext for retaliation by showing that the adverse employment action would not have occurred "but for" the protected activity.  *Id*.

Salinas contends that she was terminated after filing a charge of discrimination with the EEOC.  Exxon counters that there is no causal connection between Salinas' termination and filing a discrimination charge because Salinas filed the charge after she was informed that she was being terminated.

On January 22, 2003, Salinas' supervisor, Kurt Hardgrave, and his supervisor, David McLain, informed Salinas that her position could no longer accommodate her medical needs and she should pack up her belongings because it was her last day of work.  Hardgrave and McLain told her that she would be placed on disability leave, that Human Resources would conduct a job search to see if another full-time position could be found to meet her needs, and if the search was

unsuccessful, she would be considered for LTD benefits.  Six days later, Salinas filed her charge of discrimination.

On March 31, 2003, Salinas received a letter notifying her that Exxon had completed a search for open positions in the Baytown area and there were no openings that met her job restrictions.  The letter also stated that her case had been referred to the DRC for consideration as a medical termination case and the ruling had come back positive; she was given a medical termination date of May 1, 2003.

Salinas argues that the fact that Exxon offered to find her another position, and then could not find one and medically terminated her, is a result of her filing a charge of discrimination. The evidence does not support her argument.  Salinas admits that on January 22, 2003, she was told that if the job search proved unsuccessful, she would be considered for LTD benefits; that is exactly what occurred.  The fact that Salinas' actual termination date was May 1, 2003, is of no consequence.  *See, e.g., Watson v. Eastman Kodak Co.*, 235 F.3d 851, 856 (3d Cir. 2000) (stating that an employee's last day of work was not the date of the adverse employment action when the employee had been informed a month earlier that he was being terminated).  Salinas' medical termination could not have been the result of filing a charge of discrimination because Exxon's decision to medically terminate Salinas, if another position could not be found for her, was communicated to Salinas before she filed her discrimination charge.

Salinas also argues that she was retaliated against for counseling others about the process of filing a charge with the EEOC.  Salinas admits, however, that these counseling sessions occurred after Hardgrave and McLain met with her on January 22, 2003, and after her medical termination date of May 1, 2003; because this protected activity occurred after Salinas was terminated, the termination could not have been retaliation for informing others about filing an

EEOC complaint.  Salinas has failed to establish a causal connection between engaging in ADA-protected activity and suffering an adverse employment action; therefore her ADA retaliation claim is unsuccessful.

As discussed earlier, even if Salinas could make a prima facie case of discrimination or retaliation under the ADA, which she has not, Exxon has articulated a legitimate, non-discriminatory reason for terminating her, which Salinas cannot show to be pretext.

## V.    CONCLUSION

Because Salinas cannot prove the essential elements of her claims, Exxon is entitled to judgment as a matter of law on all claims.  Defendant's Motion for Summary Judgment (Doc. #54) is **GRANTED**.  Salinas' claims against Exxon are **DISMISSED WITH PREJUDICE**. All remaining motions are **DENIED AS MOOT**.

IT IS SO ORDERED.

SIGNED this 31st day of August, 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**